537 So.2d 125 (1988)
Mary K. HENDERSON, n/k/a Mary K. Puttkammer, Wife, Appellant,
v.
Hal HENDERSON, Husband, Appellee.
No. 88-1848.
District Court of Appeal of Florida, First District.
December 16, 1988.
On Motion for Rehearing January 20, 1989.
*126 Elliott Zisser and Nancy N. Nowlis of Zisser, Robison, Spohrer & Wilner, P.A., Jacksonville, for appellant.
Barry A. Bobek, Jacksonville, for appellee.
ZEHMER, Judge.
Appellant, Mary K. Henderson, appeals an order that modifies the final judgment of dissolution of her marriage to appellee, Hal Henderson, in that it transfers physical custody of the parties' twin daughters, Paula and Hanna, to appellee. We reverse on the ground that the evidence of record is legally insufficient to support the finding of a change of circumstances required to modify the final judgment and to establish the compelling circumstances required to support an order separating the twins, age 5, from their younger sister, Jessica, age 2.
In May 1985 the parties separated and appellant, who was pregnant, and the twins moved from Jacksonville to Indiana to live with appellant's parents. Appellee admits that his failure to support his wife and children occasioned the move. In December 1985, a few days after the birth of their youngest child, Jessica, the parties were divorced by the entry of the final judgment of dissolution. The judgment decreed that the parties would have shared parental responsibility for their three daughters, but awarded appellant responsibility for providing the primary residence for the children. The court ordered appellee to pay appellant child support and any non-insured medical expenses relating to Jessica's birth.
Appellee subsequently started a painting business and married his present wife, Elaine, who is a second-grade teacher. Meanwhile, appellant continued to live with her elderly parents and provided her and her children's support by working as a "temporary," earning approximately $6 per hour. Her child-care expenses were $110 per week and she incurred various debts, including hospital and obstetrician bills related to the birth of Jessica. Appellee failed to send appellant any child support[1] from the time of the parties' separation until November 1986 and also failed to pay the non-insured medical expenses relating to Jessica's birth. Because of her financial difficulties, appellant called appellee in October of 1986 and asked if he would take the twins for three months or, at most, until it was time for them to start kindergarten. Appellant hoped to pay off her debts and get back on her feet during this period. Appellee agreed to take the twins temporarily and went to Indiana, where he picked them up. They returned to Florida and the twins began living with him and his new wife in November 1986.
Appellant tried to contact the twins several times after their move, but appellee frustrated her attempts. Finally, she wrote appellee a letter asking him to return the girls in June 1987, on their fifth birthday. Appellee responded that it would not be convenient for him to return the twins at that time. In July 1987 appellant purchased airline tickets so she could travel to Florida to retrieve the twins. Appellee allowed appellant to visit the twins in his home, but refused to allow her to take them back to Indiana. He then filed a petition for modification of custody, requesting that the court transfer permanent custody of the twins to him.
In December 1987, with the financial assistance of her new husband, Mark Puttkammer, appellant traveled to Florida and hired an attorney to help her regain physical custody of the twins. The attorney filed a petition for writ of habeas corpus, and the twins were taken from school to attend a hearing. They appeared to be upset by this episode. Upon learning that the petition for modification of custody was pending in another division of the court, *127 the judge dismissed the habeas corpus action.
The hearing on the petition for modification was not held until March 1988. The twins' kindergarten teacher testified that when the twins first began school, they appeared insecure, scared, and unkempt. She stated that their condition had significantly improved during the time they had been living with their father. Appellee's minister corroborated the teacher's testimony, as did appellee's new wife.
The court found that a "change in circumstance" had occurred and that modifying the final judgment of dissolution to provide appellee with physical custody of the twins would be in the twins' best welfare and interest. This determination was based on findings that the twins were "insecure, scared, and unkempt" when they began living with appellee, and that their condition had significantly improved while under appellee's care. The court found that the twins' condition indicated that appellant had provided them with "less than adequate care." The court further found that the events surrounding the habeas corpus proceeding distressed the twins and blamed that distress on appellant, stating that it indicated a "lack of sensitivity."
We reverse the appealed order for several reasons. The allegations of appellee's petition for modification of custody were plainly insufficient to support any modification. A noncustodial parent who petitions for modification of child custody carries an extraordinary burden to allege and prove that a material change in circumstances has occurred warranting a change in custody and that such a change would be in the best interests of the child. Evans v. Evans, 490 So.2d 1035 (Fla. 1st DCA 1986). Although appellee's petition contained a general allegation of a substantial change in circumstances, the only fact alleged as a basis for that change was that the twins were then living with appellee and "thriving" in his care. This fact cannot support a finding of a substantial change in circumstances, however, because appellant agreed to this arrangement only on the understanding that appellee would return the twins to her during or before June 1987. To allow appellee to benefit from a change he induced by promising to keep the twins only temporarily would be inequitable. Evans v. Evans, 490 So.2d at 1036. Furthermore, allowing this agreement to serve as a basis for transferring custody would have the deleterious effect of discouraging cooperation between parents when they agree to make temporary changes in their children's living arrangements to serve their children's best interests. Hood v. Hood, 479 So.2d 269 (Fla. 1st DCA 1985). "The law should endeavor to promote such cooperation, rather than sanction use of the act of cooperation as a basis upon which to order a change in custody... ." 479 So.2d at 272.
Notwithstanding the legal insufficiency of the petition, appellee was permitted to introduce without objection evidence of the facts recited above. We find that evidence legally insufficient to support the court's finding that appellant provided the twins with less than adequate care during their residence with her. No witness other than appellant and her mother testified as to the care and condition of the twins while in the appellant's custody, and that testimony was supportive of appellant as a fit and caring mother. The evidence relied upon by the court came from appellee's witnesses, who were able to testify regarding only their observations of the twins' condition after they arrived in Florida with their father and began living with him. The twins' fearful and insecure appearance upon moving to Florida is consistent with their having been removed from their mother, grandparents, baby sister, and the home where they had been living for many months and transferred to a completely new environment. Any complaint about the quality of the twins' clothing can be attributed to the father's insensitivity regarding support payments as well as to the *128 mother's financial straits. The findings that appellant provided inadequate care and that the events surrounding the habeas corpus proceedings indicated appellant lacked sensitivity for the twins are not supported by competent, substantial evidence and therefore do not support a finding that appellant is not fit to care for her children. Appellant's reliance on her attorney's advice on how to enforce the final judgment and regain physical custody of her daughters cannot be treated as indifference or insensitivity. More importantly, the court did not disturb appellant's physical custody of Jessica, nor did appellee ask for such custody, a factor that is consistent only with an implicit finding that appellant continues to be a fit parent.
The finding that Mr. Puttkammer, appellant's new husband, does not support his wife's attempt to regain physical custody of the twins is also not supported by competent, substantial evidence. The only basis in the record for this finding is appellee's uncorroborated, self-serving, hearsay statement that Mr. Puttkammer told him that he hoped appellee would be given custody of the twins, a statement that would have been inadmissible had appellant's attorney interposed an objection.[2] Without corroboration by other competent evidence,[3] this testimony does not constitute competent, substantial evidence.
Finally, the court erred in transferring custody of the twins to appellee because this modification separated the twins from Jessica. The law is well settled in Florida that
children in a family should not be separated and distributed about in different homes, except for the most compelling cause. For while brothers and sisters may not have a legal right to remain together, to share each others lives, and to grow up together, certainly they have a natural right to do so. Justice requires that society exercise its moral duty to insure that children in a family enjoy this right until such time as absolute necessity and the welfare of the children, itself, requires their separation.
Arons v. Arons, 94 So.2d 849 (Fla. 1957).[4] Applying this principle in reversing a lower court decision that separated siblings of a marriage, the court in Doane v. Doane, 330 So.2d 753 (Fla. 2d DCA 1976), stated:
Whenever possible the family unit should not be further fractured as a consequence of a marriage being dissolved. Here, the brothers and sisters would be deprived of growing up together with some common denominator of discipline and the advantages of sharing mutual experiences within the home and family unit. Although each parent appears to be a fit and proper person, we think that considering the various factors affecting the physical, mental, and moral development of children of such tender years, and in the absence of compelling reasons to the contrary, it is appropriate that custody of James, Jr., along with the other siblings, be vested in the mother.
330 So.2d at 755. See also Bache v. Bashir, 482 So.2d 546 (Fla. 4th DCA 1986). As in Doane, the record in this case contains no competent, substantial evidence of any compelling cause for separating the children of this marriage.
In summary, the only facts alleged and proven by competent, substantial evidence are that appellee took the twins to live with him under a temporary arrangement, and that appellee failed to return them at the agreed time. This temporary arrangement will not be used as proof of a change of circumstances sufficient to warrant modification of physical custody, and the facts *129 proven by the record fail to establish the requisite compelling reasons for separating these children.
The order modifying the final judgment of dissolution of marriage is reversed, and this cause is remanded with directions that primary physical custody of the twins be returned to appellant in accordance with the terms of the final judgment. The court may make such further provisions as necessary to assure payment of the support ordered in the final judgment and reasonable visitation with appellee.
Appellant's motion for attorney's fees is granted and the lower court is further directed, upon remand, to determine and set a reasonable fee to be paid by appellee.
REVERSED AND REMANDED.
SMITH, C.J., and WIGGINTON, J., concur.

ON MOTION FOR REHEARING
Upon consideration of appellee's motion for rehearing, we find only one matter warranting correction. Appellee asserts that our opinion contains an incorrect statement of fact in stating, "In July 1987 appellant purchased airline tickets so she could travel to Florida to retrieve the twins. Appellee allowed appellant to visit the twins in his home, but refused to allow her to take them back to Indiana." Appellant's counsel concede in their reply to appellee's motion for rehearing that the above-quoted statement is incorrect and recognize that the court based this statement of fact on their unintentionally incorrect assertion of this fact in their initial brief. Appellee's answer brief did not dispute this statement of fact, and we did rely upon the unintentional statement from appellant's brief. In an effort to recite the facts with as much accuracy as possible, and despite appellee's failure to note this error in his answer brief, we amend the opinion by deleting the above-quoted sentences. This amendment has no material effect on our decision, and appellee's motion for rehearing is denied.
DENIED.
SMITH, C.J., and WIGGINTON, J., concur.
NOTES
[1] Appellee did send appellant a sixty-dollar money order, which apparently represented their income tax refund.
[2] Appellant's present attorney of record did not handle the trial proceedings.
[3] We do not agree that appellant's testimony referred to in appellee's brief is corrobative of this hearsay statement.
[4] In Brown v. Brown, 409 So.2d 1133 (Fla. 4th DCA 1982), the court observed:

This principle of non-separation is grounded in the recognition that there is often a bond of interdependence among siblings which, if left intact, can serve as a source of mutual support and can help lessen the trauma of divorce.